# EXHIBIT A-1

5/13/2016 3:04:58 PM
Chris Daniel - District Clerk Harris County
Envelope No. 10628249
By: Krystal Franklin
Filed: 5/13/2016 3:04:58 PM

# 2016-31648 / Court: 125

Case No. _____

| | | |
|---|---|---|
| Cobalt International Energy, Inc., | ) | In the District Court of |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Harris County, Texas |
| | ) | |
| XL Specialty Insurance Co., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | _____ Judicial District |

### Cobalt's Original Petition

Plaintiff Cobalt International Energy, Inc. ("Cobalt") files this original petition against defendant XL Specialty Insurance Co. ("XL") and alleges as follows:

### Discovery Control Plan

1.     Discovery should be conducted in accordance with a discovery control plan under TRCP 190.4 (Level 3).

### Parties

2.     Cobalt is a Delaware corporation with its principal place of business in Harris County, Texas.

3.     XL is a Delaware corporation doing business in the state of Texas and may be served through its registered agent for service of process in Texas: CT Corporations Systems, 1999 Bryan Street, Suite 900, Dallas, TX 75201-3136.

### Jurisdiction and Venue

4.     The amount in controversy exceeds the Court's minimum jurisdictional requirement exclusive of interest and costs.  Cobalt seeks monetary relief over $1,000,000.

4293432v1/015181

5.      This Court has personal jurisdiction over XL because XL has purposefully availed itself of the benefits of conducting business in Texas by entering into contracts with Cobalt that were to be performed in whole or in part in Texas.  *See* TCPRC § 17.042.

6.      Harris County is a proper venue because a substantial part of the events or omissions giving rise to the claims against XL occurred in Harris County.  *See* TCPRC § 15.002.

<u>Facts</u>

A.      <u>Cobalt's Insurance Coverage</u>

7.      Cobalt is a publicly traded independent exploration and production company with operations in the deepwater Gulf of Mexico and offshore Angola and Gabon in West Africa. Cobalt procures management liability insurance to protect Cobalt and its directors and officers in the event of, among other things, government investigations and private lawsuits.

8.      Effective December 15, 2010, XL and Cobalt entered into a claims made "Management Liability and Company Reimbursement Insurance Policy," policy number ELU119786-10, a true and correct copy of which is attached as Exhibit A (the "XL Policy").  XL continued to serve as Cobalt's primary insurer through December 15, 2012.

9.      The XL Policy covers "Loss resulting from a Claim first made against the Insured Persons during the Policy Period or, if applicable, the Optional Extension Period" and "Loss resulting solely from any Securities Claim first made against the Company during the Policy Period or, if applicable, the Optional Extension Period, for a Company Wrongful Act," without any requirement that the Claim also be reported to XL during the Policy Period or Optional Extension Period.

10.     Section VI(A)(2) of the XL Policy treats "as if it had been first made during the Policy Period" any Claim made against Cobalt (or an Insured Person) *after* the Policy Period, if

during the Policy Period Cobalt learned of and notified XL of the circumstances potentially giving rise to that Claim.

11.     Section II(C) of the XL Policy defines "Claim" to include, among other things, "any civil proceeding," any "administrative or regulatory proceeding commenced by a complaint, notice of charges or similar document," any "civil, criminal, administrative or regulatory investigation of an Insured Person once such Insured Person is identified by name in a Wells Notice, notice of charges, formal investigative order, subpoena, target letter or any similar document," and any "investigation of the Company for a Company Wrongful Act by the Securities Exchange Commission or any similar state, federal or foreign agency . . . ." Sections II(Q) and III(G) confirm that this definition includes shareholder derivative actions.

12.     Section II(M) of the XL Policy defines "Loss" to include "damages, judgments, settlements or other amounts" as well as "Defense Expenses in excess of the Retention that the Insured is legally obligated to pay."

13.     Section II(F) of the XL Policy defines "Defense Expenses" to include "reasonable legal fees and expenses incurred in the defense of any Claim . . . ."

14.     The XL Policy provides $20,000,000 in coverage, with a $1,000,000 retention for each Claim against the Company (and no retention for each Claim against an Insured Person).

15.     Cobalt has paid the required Policy Premium and exhausted the $1,000,000 retention for each Claim against the Company.

16.     Cobalt is entitled to the coverage guaranteed by the XL Policy.

B.    The Claims

17.    In 2007, Cobalt acquired a 40% interest in three development blocks offshore of Angola.  The Angolan government subsequently assigned interests in two of the three blocks to Nazaki Oil & Gaz ("Nazaki") and two other Angolan companies.

18.    On December 15, 2010, the XL Policy became effective.

19.    In March 2011, Cobalt disclosed in both its Form 8-K and its Form 10-K that it was aware of allegations concerning a connection between Nazaki and senior Angolan government officials and that the SEC was investigating the allegations.  Cobalt also disclosed that it had voluntarily contacted the DOJ and offered to respond to any requests from the agency.

20.    On October 26, 2011, the SEC issued a non-public Order Directing Private Investigation and Designating Officers to Take Testimony (the "October Order"), a copy of which Cobalt received on November 7, 2011.  Cobalt disclosed the October Order and Cobalt's cooperation with both the SEC and DOJ investigations in its February 21, 2012 Form 10-K.

21.    Effective December 15, 2011, XL and Cobalt renewed the XL Policy.  A true and correct copy of the renewed XL Policy, policy number ELU124020-11, is attached as Exhibit B.

22.    On Sunday, April 15, 2012, the Financial Times published two articles related to the potential connection between Nazaki and Angolan government officials.

23.    On May 8, 2012, Cobalt received an inspection of books and records demand from two purported shareholders.  In response, Cobalt produced a limited set of records subject to a confidentiality agreement.

C.    XL Improperly Denies Coverage

24.    On July 30, 2012, Cobalt provided XL with a "notice of Claim and/or notice of circumstances that may give rise to a Claim" (the "July Notice").  Cobalt expressly identified:

a.   Cobalt's cooperation with the ongoing SEC and DOJ investigations;

b.   The October Order;

c.   The April 2012 Financial Times articles;

d.   Internet postings suggesting that several shareholders were considering claims against Cobalt and/or its directors or officers; and

e.   The May 8, 2012 demand for inspection of books and records.

25.   Cobalt attached a copy of the October Order, the Financial Times articles, the Internet postings, and the shareholder demand to the July Notice.

26.   On September 19, 2012, XL sent Cobalt a letter denying coverage on the grounds that XL was not notified "as soon as practicable" after the SEC made a Claim against Cobalt.

27.   On November 5, 2012, Cobalt rebutted XL's rationale for denying coverage, stating, among other arguments, that "XL has not been prejudiced by receiving the SEC Order" no later than August 1, 2012 and therefore XL remained obligated to provide coverage under the XL Policy.

28.   On November 12, 2012, XL responded to Cobalt's letter and again denied coverage.

29.   On November 19, 2012, Cobalt responded to XL's repeated improper denials of coverage by reserving all of its rights and remedies with respect to the dispute.

D.   Subsequent Events

30.   On December 15, 2012, Cobalt chose not to renew or to otherwise continue the XL Policy.   Instead, Cobalt obtained management liability insurance from Illinois National Insurance Company, an AIG subsidiary.

31.    On August 4, 2014, the SEC issued a "Wells Notice" to Cobalt.  The Wells Notice stated that staff at the SEC had "made a preliminary determination to recommend that the Commission file an enforcement action" against Cobalt alleging violations of Sections 30A, 13(b)(2)(A) and 13(b)(2)(B) of the Securities Exchange Act of 1934.

32.    On August 14, 2014, Cobalt informed XL of the SEC's Wells Notice and of Cobalt's intent to make a submission to the SEC in response to that notice (the "August Notice"). Cobalt also informed XL that a number of law firms had announced related investigations of Cobalt.

33.    On September 8, 2014, XL responded to Cobalt's August 14, 2014 letter stating that "coverage is unavailable" for either the Wells Notice or the SEC investigation.  XL said it was denying coverage because both the Wells Notice and the SEC investigation related back to the October Order and therefore, according to XL, "Cobalt did not provide timely notice."

34.    On November 30, 2014 and again on December 5, 2014, purported Cobalt shareholders brought putative class actions against Cobalt and several of its directors and officers.   The plaintiffs asserted damages from, among other things, (1) alleged misrepresentations and omissions about Nazaki's relationship with Angolan government officials, and (2) Cobalt's alleged public misrepresentations and omissions about two exploration wells – the 2013 Lontra well and the 2014 Loengo well.   These cases ultimately were consolidated into *In re Cobalt International Energy, Inc. Securities Litigation*, Case No. H-14-3428.  On December 23, 2014, Cobalt provided XL notice of these claims (the "December Notice").

35.    On January 16, 2015, additional Cobalt shareholders brought a purported derivative action against Cobalt's directors and officers based on accusations similar to those

asserted in the consolidated securities litigation (together, with the consolidated securities litigation, the "Active Litigation").

36.     On January 22, 2015, the SEC informed Cobalt that it had concluded its investigation and did "not intend to recommend an enforcement action by the Commission against Cobalt."

37.     On February 10, 2015, Cobalt provided XL notice of the purported derivative action described above in Paragraph 35 (the "February Notice").

38.     On March 23, 2015, XL denied coverage for the Active Litigation on the grounds that these Claims "were filed after the Policy Period" and therefore "no coverage is available."

39.     On May 28, 2015, Cobalt tendered the Active Litigation for full defense and indemnity coverage (the "May Notice").

40.     On July 21, 2015, a purported shareholder filed a demand that Cobalt conduct an internal investigation of Cobalt's public representations regarding the size and content of the oil and gas fields in its Angolan leases. Cobalt notified XL of this demand on August 3, 2015 (the "August Notice").

41.     On August 6, 2015, XL rejected coverage for the July 21, 2015 shareholder demand, this time on the grounds that the derivative demand was not made during the pendency of the XL Policy and did "not arise from Interrelated Wrongful Acts" with Claims or potential Claims disclosed during the pendency of the XL Policy.

42.     Cobalt has incurred, and will continue to incur, Defense Expenses associated with the circumstances, investigations, and claims described above.  Cobalt's covered Defense Expenses incurred and paid to date exceed the XL Policy's $1 million retention.  Cobalt has also incurred covered Derivative Investigation Costs and will continue to incur those costs.

<u>Causes of Action</u>

A.    <u>Breach of Contract</u>

43.    Cobalt incorporates the allegations in the paragraphs above.

44.    Cobalt and XL executed a valid and enforceable written contract, effective December 15, 2010, which they renewed on December 15, 2011.

45.    The contract provided that, in exchange for Cobalt's payment of the Policy Premium, XL would pay on behalf of Cobalt losses (including Defense Expenses) resulting from claims made against Cobalt and/or its current and former employees, directors, officers, and board members.

46.    Cobalt fully performed its contractual obligations.

47.    XL breached the contract by (1) repeatedly denying coverage to Cobalt for Claims made during the policy period and/or Claims treated as made during the policy period pursuant to Section VI(A)(2) of the XL Policy and (2) refusing to pay Cobalt's Loss associated with the circumstances, investigations, and claims described above.

48.    As a direct and proximate result of XL's breaches, Cobalt has suffered damages in excess of this Court's jurisdictional limits, and they are increasing.  In accordance with TCPRC § 38.002, Cobalt "presents" its breach of contract claim to XL and demands that XL pay the sum of $11,000,000 to Cobalt within 30 days of this demand.  Cobalt has retained counsel and is entitled to recover its reasonable attorney's fees and expenses under TCPRC Chapter 38.  XL is advised that if it fails to tender the amount demanded within 30 days, Cobalt will seek an award of attorney's fees in accordance with TCPRC Chapter 38.

B.    <u>Declaratory Judgment</u>

49.    Cobalt incorporates the allegations in the paragraphs above.

50.     Cobalt has incurred and will continue to incur Defense Expenses and Derivative Investigation Expenses due to the circumstances, investigations, and claims described above.

51.     Pursuant to TCPRC Chapter 37, Cobalt seeks and is entitled to a declaration that XL is obligated to pay any additional Loss, including Defense Expenses and Derivative Investigation Expenses, suffered by Cobalt due to the circumstances, investigations, and claims described above.

52.     In accordance with TCPRC § 37.009, Cobalt seeks and is entitled to an equitable and just award of costs and attorney's fees.

<u>Conditions Precedent</u>

53.     Cobalt satisfied all conditions precedent under the XL Policy, including but not limited to the payment of premiums, notice, and payment of any required retention. Therefore, all conditions precedent to Cobalt's claims for relief have been performed or have occurred.

<u>Jury Demand</u>

54.     Cobalt demands a trial by jury and tenders the appropriate fee with this Petition.

<u>Request for Disclosure</u>

55.     Cobalt requests that XL disclose within fifty (50) days of services of this request the information or material described in TRCP 194.2.

<u>Request for Production of Documents</u>

56.     Pursuant to TRCP 192 and 196, Cobalt has served along with this petition a request for the production of documents and tangible things.

<u>Prayer</u>

57.     Cobalt respectfully requests that the Court enter judgment in favor of Cobalt and against XL:

a.  Awarding Cobalt actual damages, costs and attorney's fees, all other costs and expenses as allowed by law, and pre- and post-judgment interest at the maximum legal rate.

b.  Declaring that XL is obligated to pay any additional Loss, including Defense Expenses and Derivative Investigation Expenses, suffered by Cobalt due to the circumstances, investigations, and claims described above.

c.  Awarding Cobalt all other relief, legal and equitable, to which Cobalt justly is entitled.

Respectfully submitted,

SUSMAN GODFREY L.L.P.

By:    */s/ Eric J. Mayer*
     Eric J. Mayer
     Texas State Bar No. 13274675
     emayer@susmangodfrey.com
     Shawn L. Raymond
     Texas State Bar No. 24009236
     sraymond@susmangodfrey.com
     Adam Carlis
     Texas State Bar No. 24085237
     acarlis@susmangodfrey.com
     1000 Louisiana Street, Suite 5100
     Houston, Texas 77002-5096
     Telephone:  (713) 651-9366
     Fax:  (713) 654-6666

     Attorneys for Cobalt International Energy, Inc.