# EXHIBIT A-3

9/15/2016 5:09:59 PM
Chris Daniel - District Clerk Harris County
Envelope No. 12732155
By: Brianna Denmon
Filed: 9/15/2016 5:09:59 PM

CAUSE NO. 2016-31648

| | | |
|---|---|---|
| COBALT INTERNATIONAL ENERGY, INC., | §<br>§<br>§ | IN THE DISTRICT COURT OF |
| *Plaintiff*, | §<br>§ | |
| v. | §<br>§ | HARRIS COUNTY, TEXAS |
| XL SPECIALTY INSURANCE CO., | §<br>§ | |
| *Defendant*. | §<br>§ | 125TH JUDICIAL DISTRICT |

**ORIGINAL PETITION IN INTERVENTION OF JACK E. GOLDEN, JON A. MARSHALL, D. JEFF VAN STEENBERGEN, MYLES W. SCOGGINS, MARTIN H. YOUNG, WILLIAM P. UTT, KENNETH W. MOORE, JR., JAMES W. FARNSWORTH, JOSEPH H. BRYANT, JOHN P. WILKIRSON, J. HARDY MURCHISON, PETER R. CONEWAY, N. JOHN LANCASTER, JR. HENRY CORNELL, AND KENNETH A. PONTARELLI**

Intervenors Jack E. Golden, Jon A. Marshall, D. Jeff van Steenbergen, Myles W. Scoggins, Martin H. Young, William P. Utt, Kenneth W. Moore, Jr., James W. Farnsworth, Joseph H. Bryant, John P. Wilkirson, J. Hardy Murchison, Peter R. Coneway, N. John Lancaster, Jr., Henry Cornell, and Kenneth A. Pontarelli, (hereinafter, "Intervenors" or "Cobalt Directors and Officers") file this Original Petition in Intervention.

## I.    Introduction and Parties

1.      Pursuant to Texas Rule of Civil Procedure 60 and Section 37.006(a) of the Civil Practice and Remedies Code, the Cobalt Officers and Directors hereby intervene in this action.

2.      The Plaintiff is Cobalt International Energy, Inc. ("Cobalt"), a Delaware Corporation with its principal place of business in Harris County, Texas. Cobalt may be served through its registered agent for service of process: Corporation Service Company d/b/a CSC-

Lawyers Inc., 211 E. 7th Street, Suite 620, Austin, TX 78701. Cobalt has appeared in this action.

3.      Intervenors are former and current directors and officers of Cobalt.

4.      Intervenor Jack E. Golden is a current Director of Cobalt and a resident of Texas.

5.      Intervenor Jon A. Marshall is a current Director of Cobalt and a resident of Texas.

6.      Intervenor D. Jeff van Steenbergen is a current Director of Cobalt and a resident of Alberta, Canada.

7.      Intervenor Myles W. Scoggins is a current Director of Cobalt and a resident of Colorado.

8.      Intervenor Martin H. Young, Jr. is a current Director of Cobalt and a resident of Texas.

9.      Intervenor William P. Utt is a current Director of Cobalt and a resident of Texas.

10.     Intervenor Kenneth W. Moore is a current Director of Cobalt and a resident of Connecticut.

11.     Intervenor James W. Farnsworth is a current Officer of Cobalt and a resident of Texas.

12.     Intervenor Joseph H. Bryant is a former Director and Officer of Cobalt and a resident of Texas.

13.     Intervenor John P. Wilkirson is a former Officer of Cobalt and a resident of Texas.

14.     Intervenor J. Hardy Murchison is a former Director of Cobalt and a resident of Texas.

15.     Intervenor Peter R. Coneway is a former Director of Cobalt and a resident of Texas.

16.     Intervenor N. John Lancaster, Jr. is a former Director of Cobalt and a resident of Connecticut.

17.     Intervenor Henry Cornell is a former Director of Cobalt and a resident of New York.

18.     Intervenor Kenneth A. Pontarelli is a former Director of Cobalt and a resident of New York.

19.     Defendant XL Specialty Insurance Co. ("XL") is a Delaware corporation doing business in Harris County, Texas.  XL may be served through its registered agent for service of process in Texas: CT Corporations Systems, 1999 Bryan Street, Suite 900, Dallas, TX 75201-3136.  XL has appeared in this action.

20.     Cobalt originally filed this action against XL to seek coverage under insurance policies issued by XL.  Specifically, in this lawsuit Cobalt (1) alleges that XL breached its obligations under its insurance policy with Cobalt by wrongfully denying coverage under the policy and refusing to pay Cobalt's Loss associated with the circumstances, investigations, and claims described in Cobalt's Petition, *see* Cobalt Orig. Pet. ¶¶ 43-48; and (2) seeks a declaration that XL is "obligated to pay any additional Loss, including Defense Expenses and Derivative Investigation Expenses, suffered by Cobalt due to the circumstances, investigation, and claims" described in its Petition, *id.* ¶ 51; *see also id.* ¶¶ 49-52.

## II.     <u>Venue and Jurisdiction</u>

21.     The jurisdictional allegations in the lawsuit confer jurisdiction over the Cobalt Directors and Officers' petition in intervention because this petition involves the same subject

matter as that in Cobalt's suit against XL.  The amount in controversy exceeds the Court's minimum jurisdictional requirement exclusive of interest and costs.  Specifically, Cobalt seeks monetary relief over $1,000,000 as well as declaratory relief.

22.     Jurisdiction is also proper over the Cobalt Directors and Officers' claim for declaratory relief because it relates to the same subject matter at issue in Cobalt's suit against XL and thus relates to the claims at issue in this lawsuit.  Further, jurisdiction is proper under Texas Civil Practice and Remedies Code Section 37 because Intervenors seek a declaration of their rights under a written contract.

23.     Venue is proper under Section 15.002 of the Texas Civil Practices and Remedies Code because all or a substantial part of the events or omissions giving rise to Intervenors' claims occurred in Harris County, Texas.

24.     The Cobalt Directors and Officers may intervene in this action pursuant to Texas Civil Rule of Procedure 60 because the Cobalt Directors and Officers could have brought the same action, or a part thereof, against XL.  *See, e.g.*, *Guaranty Fed. Savings Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 657 (Tex. 1990)

### III.     Factual Allegations

A.     The Cobalt Directors' and Officers' Insurance Coverage

25.     Cobalt is a publicly traded independent exploration and production company with operations in the deepwater Gulf of Mexico and offshore Angola and Gabon in West Africa. Cobalt procures management liability insurance to protect Cobalt and its directors and officers in the event of, among other things, government investigations and private lawsuits.

26.     Effective December 15, 2010, XL and Cobalt entered into a claims made "Management Liability and Company Reimbursement Insurance Policy," policy number

ELU119786-10, a true and correct copy of which is attached as Exhibit A (the "XL Policy").[1] The Cobalt Directors and Officers are named insureds (or "Insured Persons") under the XL Policy. *See* Ex. A § II(J)(1) ("'Insured Person' means . . . any past, present or future director or officer . . . of the Company . . . ."). XL continued to serve as Cobalt's—and thus as the Cobalt Directors' and Officers'—primary insurer through December 15, 2012.

27.     As it pertains to the Cobalt Directors and Officers, the XL Policy obligates XL to "pay on behalf of the Company Loss which the Company is required or permitted to pay as indemnification to any of the Insured Persons resulting from a Claim first made against the Insured Persons during the Policy Period . . . for a Wrongful Act . . . ." Ex. A § I(B).  Under various indemnification agreements between Cobalt and the Cobalt Directors and Officers, Cobalt is required to indemnify the Cobalt Directors and Officers to the fullest extent permitted by applicable law.   Moreover, the Delaware General Corporation Law permits defense and indemnification of the Cobalt Directors and Officers. *See, e.g.*, DEL. CODE ANN. Tit. 8, § 145. Accordingly, under the XL Policy, XL is obligated to "pay on behalf of the Company" any such indemnifiable amounts up to the policy limits. Ex. A § I(B).

28.     The XL Policy covers, among other things, "Loss resulting from a Claim first made against the Insured Persons during the Policy Period or, if applicable, the Optional Extension Period" and "Loss resulting solely from any Securities Claim first made against the Company during the Policy Period or, if applicable, the Optional Extension Period, for a Company Wrongful Act," without any requirement that the Claim also be reported to XL during the Policy Period or Optional Extension Period.

---

[1] Unless otherwise defined herein, all capitalized terms have the meaning set out in the XL Policy.

29.     Section VI(A)(2) of the XL Policy treats "as if it had been first made during the Policy Period" any Claim made against Cobalt or an Insured Person *after* the Policy Period, if during the Policy Period Cobalt learned of and notified XL of the circumstances potentially giving rise to that Claim.

30.     Section II(C) of the XL Policy defines "Claim" to include, among other things, any "written demand or notice for monetary or non-monetary relief," "civil proceeding," "administrative or regulatory proceeding commenced by a complaint, notice of charges or similar document," "civil, criminal, administrative or regulatory investigation of an Insured Person once such Insured Person is identified by name in a Wells Notice, notice of charges, formal investigative order, subpoena, target letter or any similar document," and "investigation of the Company for a Company Wrongful Act by the Securities Exchange Commission or any similar state, federal or foreign agency . . . ." Sections II(Q) and III(G) confirm that this definition includes shareholder derivative actions.

31.     Section II(M) of the XL Policy defines "Loss" to include "damages, judgments, settlements or other amounts" as well as "Defense Expenses in excess of the Retention that the Insured is legally obligated to pay."

32.     Section II(F) of the XL Policy defines "Defense Expenses" to include "reasonable legal fees and expenses incurred in the defense of any Claim . . . ."

33.     The XL Policy provides $20,000,000 in coverage, with a $1,000,000 retention for each Claim against the Company but no retention for each Claim against an Insured Person.  The renewed CL Policy provides $15,000,000 in coverage, with the same $1,000,000 retention for each Claim against the Company but no retention for each Claim against an Insured Person.

34.     Cobalt has paid the required Policy Premium, and the Cobalt Directors and Officers are therefore entitled to the coverage guaranteed by the XL Policy.

B.     The Claims

35.     In 2007, Cobalt acquired a 40% interest in three development blocks offshore of Angola. The Angolan government subsequently assigned interests in two of the three blocks to Nazaki Oil & Gaz ("Nazaki") and two other Angolan companies.

36.     On December 15, 2010, the XL Policy became effective.

37.     In March 2011, Cobalt disclosed in both its Form 8-K and its Form 10-K that it was aware of allegations concerning a connection between Nazaki and senior Angolan government officials and that the SEC was investigating the allegations.  Cobalt also disclosed that it had voluntarily contacted the DOJ and offered to respond to any requests from the agency.

38.     On October 26, 2011, the SEC issued a non-public Order Directing Private Investigation and Designating Officers to Take Testimony (the "October Order"), a copy of which Cobalt received on November 7, 2011.  Cobalt disclosed the October Order and Cobalt's cooperation with both the SEC and DOJ investigations in its February 21, 2012 Form 10-K.

39.     Effective December 15, 2011, XL and Cobalt renewed the XL Policy. A true and correct copy of the renewed XL Policy, policy number ELU124020-11, is attached as Exhibit B.

40.     On Sunday, April 15, 2012, the Financial Times published two articles related to the potential connection between Nazaki and Angolan government officials.

41.     On May 8, 2012, Cobalt received an inspection of books and records demand from two purported shareholders.  In response, Cobalt produced a limited set of records subject to a confidentiality agreement.

7

42.     On July 30, 2012, Cobalt provided XL with a "notice of Claim and/or notice of circumstances that may give rise to a Claim" (the "July Notice").  Cobalt expressly identified:

a.     Cobalt's cooperation with the ongoing SEC and DOJ investigations;

b.     the October Order;

c.     the April 2012 Financial Times articles;

d.     internet postings suggesting that several shareholders were considering claims against Cobalt and/or its directors or officers; and

e.     The May 8, 2012 demand for inspection of books and records.

43.     Cobalt attached a copy of the October Order, the Financial Times articles, the Internet postings, and the shareholder demand to the July Notice.

C.     XL Improperly Denies Coverage

44.     On September 19, 2012, XL sent Cobalt a letter denying coverage on the grounds that XL was not notified "as soon as practicable" after the SEC made a Claim against Cobalt.

45.     On November 5, 2012, Cobalt rebutted XL's rationale for denying coverage, stating, among other arguments, that "XL has not been prejudiced by receiving the SEC Order" no later than August 1, 2012 and therefore XL remained obligated to provide coverage under the XL Policy.

46.     On November 12, 2012, XL responded to Cobalt's letter and again denied coverage.

47.     On November 19, 2012, Cobalt responded to XL's repeated improper denials of coverage by reserving all of its rights and remedies with respect to the dispute.

D.   Subsequent Events

48.   On December 15, 2012, Cobalt chose not to renew or to otherwise continue the XL Policy.   Instead, Cobalt obtained management liability insurance from Illinois National Insurance Company, an AIG subsidiary.

49.   On August 4, 2014, the SEC issued a "Wells Notice" to Cobalt. The Wells Notice stated that staff at the SEC had "made a preliminary determination to recommend that the Commission file an enforcement action" against Cobalt alleging violations of Sections 30A, 13(b)(2)(A) and 13(b)(2)(B) of the Securities Exchange Act of 1934.

50.   On August 14, 2014, Cobalt informed XL of the SEC's Wells Notice and of Cobalt's intent to make a submission to the SEC in response to that notice (the "August Notice"). Cobalt also informed XL that a number of law firms had announced related investigations of Cobalt.

51.   On September 8, 2014, XL responded to Cobalt's August 14, 2014 letter stating that "coverage is unavailable" for either the Wells Notice or the SEC investigation.   XL said it was denying coverage because both the Wells Notice and the SEC investigation related back to the October Order and therefore, according to XL, "Cobalt did not provide timely notice."

52.   On November 30, 2014 and again on December 5, 2014, purported Cobalt shareholders brought putative class actions against Cobalt and several of the Cobalt Directors and Officers.   The plaintiffs asserted damages from, among other things, (1) alleged misrepresentations and omissions about Nazaki's relationship with Angolan government officials, and (2) Cobalt's alleged public misrepresentations and omissions about two exploration wells—the 2013 Lontra well and the 2014 Loengo well.   These cases ultimately were consolidated into *In re Cobalt International Energy, Inc. Securities Litigation*, Case No. H-14-

3428. On December 23, 2014, Cobalt provided XL notice of these claims (the "December Notice").

53.     On January 16, 2015, additional Cobalt shareholders brought a purported derivative action against certain of the Cobalt Directors and Officers based on accusations similar to those asserted in the consolidated securities litigation (together, with the consolidated securities litigation, the "Active Litigation").

54.     On January 22, 2015, the SEC informed Cobalt that it had concluded its investigation and did "not intend to recommend an enforcement action by the Commission against Cobalt."

55.     On February 10, 2015, Cobalt provided XL notice of the purported derivative action described above in Paragraph 53 (the "February Notice").

56.     On March 23, 2015, XL denied coverage for the Active Litigation on the grounds that these Claims "were filed after the Policy Period" and therefore "no coverage is available."

57.     On May 28, 2015, Cobalt tendered the Active Litigation for full defense and indemnity coverage (the "May Notice").

58.     On July 21, 2015, a purported shareholder filed a demand that Cobalt conduct an internal investigation of Cobalt's public representations regarding the size and content of the oil and gas fields in its Angolan leases. Cobalt notified XL of this demand on August 3, 2015 (the "August Notice").

59.     On August 6, 2015, XL rejected coverage for the July 21, 2015 shareholder demand, this time on the grounds that the derivative demand was not made during the pendency of the XL Policy and did "not arise from Interrelated Wrongful Acts" with Claims or potential Claims disclosed during the pendency of the XL Policy.

## IV.    Intervention

60.    The Cobalt Directors and Officers join this action as a matter of right pursuant to Texas Rule of Civil Procedure 60.  First, Intervenors have a justiciable interest in this proceeding because they are Insured Persons under the XL Policy.  *See* Ex. A ¶ II(J)(1); *see also* Ex. B ¶ II(J)(1).  Accordingly, XL's wrongful denial of coverage prejudices the Cobalt Directors and Officers.  Thus, Intervenors have an interest in, and will be affected by the resolution of, Cobalt's pending claims and request for declaratory judgment and are necessary parties to this action under Section 37.006 of the Texas Civil Practice and Remedies Code.  Second, intervention will not complicate the case by excessive multiplication of the issues because Intervenors' claim arises from the same transactions and occurrences, and involves common questions of law and fact, as Plaintiffs' pending request for declaratory relief regarding XL's obligation to pay for Losses.  Third, intervention is essential to effectively protect Intervenors' interests.  Intervenors are entitled to coverage under the XL Policy, and intervention is necessary to secure a ruling regarding such coverage.

61.    Moreover, intervention is proper pursuant to Section 37.006(a) of the Civil Practice and Remedies Code, which provides that "[w]hen declaratory relief is sought, all persons who have or claim any interest that would be affected by the declaration must be made parties."

## V.    Cause of Action

62.    Intervenors incorporate the allegations set forth in all preceding paragraphs as if restated in full herein.

63.    There is a justiciable controversy regarding the Cobalt Directors and Officers' entitlement to coverage under the XL Policy.  This controversy is real and substantial and

involves a genuine conflict of tangible interests.  A declaration from the court would resolve this controversy.

64.     Therefore, pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code, Intervenors request and are entitled to a declaration that XL is obligated to pay on behalf of the Company any Loss incurred by any past, present, or future director or officer of Cobalt, including Defense Expenses and Derivative Investigation Expenses, suffered due to the circumstances, investigations, and claims described above.

65.     In addition, in accordance with Texas Rule of Civil Procedure § 37.09, Intervenors seek and are entitled to an equitable and just award of costs and attorneys' fees.

## VI.     Conditions Precedent

66.     All conditions precedent to the claims asserted and relief requested herein have been performed or have occurred as required by law.

## VII.     Prayer

67.     Intervenors respectfully request that the Court enter judgment in favor of the Cobalt Directors and Officers awarding the following:

    a.  declaratory relief as described above;

    b.  attorneys' fees and expenses as allowed by law;

    c.  costs of Court; and

    d.  such other and further relief, at law or in equity, to which they may be entitled.

September 15, 2016.

                        Respectfully submitted,

                        GIBBS & BRUNS, LLP

                        By:    /s/  Barrett H. Reasoner
                            Barrett H. Reasoner

Texas Bar No. 16641980
breasoner@gibbsbruns.com
Jeffrey C. Kubin
Texas Bar No. 24002431
jkubin@gibbsbruns.com
Michael R. Absmeier
Texas Bar No. 24050195
mabsmeier@gibbsbruns.com
1100 Louisiana, Suite 5300
Houston, Texas  77002
Telephone:  713-650-8805
Facsimile:  713-750-0903

**ATTORNEYS FOR INTERVENORS**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing instrument was served upon the following counsel of record on this 15th day of September, 2016.

Eric J. Mayer
Shawn L. Raymond
Adam Carlis
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas  77002
*Attorneys for Cobalt International Energy, Inc.*

Howard Close
Andrew Love
WRIGHT & CLOSE, LLP
One Riverway, Suite 2200
Houston, Texas  777056
*Attorneys for XL Specialty Insurance Company*

David H. Topol
Cara Duffield
Leland Jones
WILEY REIN, LLP
1776 K. Street NW
Washington, D.C.  20006
*Attorneys for XL Specialty Insurance Company*

___*/s/ Michael R. Absmeier*_____
Michael R. Absmeier