# EXHIBIT A-6

CAUSE NO. 2016-31648

| | | |
|---|---|---|
| COBALT INTERNATIONAL ENERGY, INC., | § § § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § § | |
| v. | § § | HARRIS COUNTY, TEXAS |
| XL SPECIALTY INSURANCE CO.; ILLINOIS NATIONAL INSURANCE COMPANY, AN AIG SUBSIDIARY; AND AXIS INSURANCE COMPANY; | § § § § § | |
| *Defendants.* | § | 125TH JUDICIAL DISTRICT |

**FIRST AMENDED PETITION IN INTERVENTION OF JACK E. GOLDEN, JON A. MARSHALL, D. JEFF VAN STEENBERGEN, MYLES W. SCOGGINS, MARTIN H. YOUNG, WILLIAM P. UTT, KENNETH W. MOORE, JR., JAMES W. FARNSWORTH, JOSEPH H. BRYANT, JOHN P. WILKIRSON, J. HARDY MURCHISON, PETER R. CONEWAY, N. JOHN LANCASTER, JR. HENRY CORNELL, AND KENNETH A. PONTARELLI**

Intervenors Jack E. Golden, Jon A. Marshall, D. Jeff van Steenbergen, Myles W. Scoggins, Martin H. Young, William P. Utt, Kenneth W. Moore, Jr., James W. Farnsworth, Joseph H. Bryant, John P. Wilkirson, J. Hardy Murchison, Peter R. Coneway, N. John Lancaster, Jr., Henry Cornell, and Kenneth A. Pontarelli, (hereinafter, "Intervenors" or the "Cobalt Directors and Officers") file this First Amended Petition in Intervention.

### I.   Introduction and Parties

1. Pursuant to Texas Rule of Civil Procedure 60 and Section 37.006(a) of the Civil Practice and Remedies Code, the Cobalt Directors and Officers hereby intervene in this action.

2. The Plaintiff is Cobalt International Energy, Inc. ("Cobalt"), a Delaware Corporation with its principal place of business in Harris County, Texas. Cobalt may be served through its registered agent for service of process: Corporation Service Company d/b/a CSC-

Lawyers Inc., 211 E. 7th Street, Suite 620, Austin, TX 78701. Cobalt has appeared in this action.

3. Intervenors are former and current directors and officers of Cobalt.

4. Intervenor Jack E. Golden is a current Director of Cobalt and a resident of Texas.

5. Intervenor Jon A. Marshall is a current Director of Cobalt and a resident of Texas.

6. Intervenor D. Jeff van Steenbergen is a current Director of Cobalt and a resident of Alberta, Canada.

7. Intervenor Myles W. Scoggins is a current Director of Cobalt and a resident of Colorado.

8. Intervenor Martin H. Young, Jr. is a current Director of Cobalt and a resident of Texas.

9. Intervenor William P. Utt is a current Director of Cobalt and a resident of Texas.

10. Intervenor Kenneth W. Moore is a current Director of Cobalt and a resident of Connecticut.

11. Intervenor James W. Farnsworth is a current Officer of Cobalt and a resident of Texas.

12. Intervenor Joseph H. Bryant is a former Director and Officer of Cobalt and a resident of Texas.

13. Intervenor John P. Wilkirson is a former Officer of Cobalt and a resident of Texas.

14. Intervenor J. Hardy Murchison is a former Director of Cobalt and a resident of Texas.

15. Intervenor Peter R. Coneway is a former Director of Cobalt and a resident of Texas.

16. Intervenor N. John Lancaster, Jr. is a former Director of Cobalt and a resident of Connecticut.

17. Intervenor Henry Cornell is a former Director of Cobalt and a resident of New York.

18. Intervenor Kenneth A. Pontarelli is a former Director of Cobalt and a resident of New York.

19. Defendant XL Specialty Insurance Co. ("XL") is a Delaware corporation doing business in Harris County, Texas. XL may be served through its registered agent for service of process in Texas: CT Corporations Systems, 1999 Bryan Street, Suite 900, Dallas, TX 75201-3136. XL has appeared in this action.

20. Defendant Illinois National Insurance Company, an AIG subsidiary, ("AIG") is an Illinois corporation with, as AIG maintains, its principal place of business in New York. AIG does business in the state of Texas and may be served through its registered agent for service of process in Texas: Unites States Corporation Company, 211 East 7th Street, Suite 620, Austin, Texas 78701-3218.

21. Defendant Axis Insurance Company ("Axis") is an Illinois corporation with its principal place of business in Georgia. Axis does business in the state of Texas and may be served through its registered agent for service of process in Texas: Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701-3218.

22. Cobalt originally filed this action against XL to seek coverage under insurance policies issued by XL. Cobalt subsequently joined AIG and Axis in this action. With respect to

3

XL, Cobalt (1) alleges that XL breached its obligations under its insurance policy with Cobalt by wrongfully denying coverage under the policy and refusing to pay Cobalt's Loss associated with the circumstances, investigations, and claims described in Cobalt's Petition, *see* Cobalt Third Am. Pet. ¶¶ 61-65; (2) seeks a declaration that XL is "obligated to pay any additional Loss, including Defense Expenses and Derivative Investigation Expenses, suffered by Cobalt due to the circumstances, investigation, and claims" described in its Petition, *id.* ¶¶ 66-69; and (3) alleges that XL violated the Texas Prompt Payment of Claims Act, *see id.* ¶¶ 70-74. Similarly, Cobalt seeks a declaratory judgment against Axis—which provides excess coverage to the XL policy—confirming that "Axis must cover the circumstances, investigations, and claims" described in Cobalt's Petition. *Id.* ¶¶ 75-79. Finally, with regard to AIG, Cobalt (1) alleges that AIG breached its obligations under its insurance policy with Cobalt by wrongfully denying coverage under the policy and refusing to pay Cobalt's Loss associated with the circumstances, investigations, and claims described in Cobalt's Petition, *see* Cobalt Third Am. Pet. ¶¶ 80-84; (2) seeks a declaration that AIG is "obligated to pay any additional Loss, including Defense Costs and Derivative Investigation Costs, suffered by Cobalt due to the relevant circumstances, investigation, and claims" described in its Petition, *id.* ¶¶ 85-88; (3) alleges that AIG violated the Texas Prompt Payment of Claims Act, *see id.* ¶¶ 89-93, and (4) alleges that AIG violated Chapter 541 of the Texas Insurance Code and the DTPA, *see id.* ¶¶ 94-100.

## II.   Venue and Jurisdiction

23.   The jurisdictional allegations in the lawsuit confer jurisdiction over the Cobalt Directors and Officers' petition in intervention because this petition involves the same subject matter as that in Cobalt's suit against XL, Axis, and AIG. The amount in controversy exceeds

4

the Court's minimum jurisdictional requirement exclusive of interest and costs. Specifically, Cobalt seeks monetary relief over $1,000,000 as well as declaratory relief.

24. Jurisdiction is also proper over the Cobalt Directors' and Officers' claim for declaratory relief because it relates to the same subject matter at issue in Cobalt's suit against XL, Axis, and AIG and thus relates to the claims at issue in this lawsuit. Further, jurisdiction is proper under Texas Civil Practice and Remedies Code Section 37 because Intervenors seek a declaration of their rights under written contracts.

25. Venue is proper under Section 15.002 of the Texas Civil Practices and Remedies Code because all or a substantial part of the events or omissions giving rise to Intervenors' claims occurred in Harris County, Texas.

26. The Cobalt Directors and Officers may intervene in this action pursuant to Texas Civil Rule of Procedure 60 because the Cobalt Directors and Officers could have brought the same action, or a part thereof, against XL, Axis, or AIG. *See, e.g.*, *Guaranty Fed. Savings Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 657 (Tex. 1990)

### III.   Factual Allegations

27. Cobalt is a publicly traded independent exploration and production company with operations in the deepwater Gulf of Mexico and offshore Angola and Gabon in West Africa. Cobalt procures management liability insurance to protect Cobalt and its directors and officers in the event of, among other things, government investigations and private lawsuits.

28. This lawsuit involves two groups of claims against Cobalt and the Cobalt Directors and Officers. The first involves Cobalt's relationship with Nazaki Oil and Gas ("Nazaki") and Nazaki's purported association with senior Angolan government officials (the "Nazaki Claims"). The Nazaki Claims accrued when XL was Cobalt's primary insurer, and the

Cobalt Directors and Officers are therefore entitled to coverage for the Nazaki Claims under Cobalt's insurance agreements with XL (the "XL Policies"). XL has improperly denied coverage for the Nazaki Claims, as further described below.

29. The second group of claims relate to Cobalt's disclosures about two wells that Cobalt drilled in 2013 and 2014 (the "Well Disclosure Claims"). The Well Disclosure Claims accrued during the period of time when AIG was Cobalt's primary insurer, and are therefore covered by Cobalt's insurance policies with AIG (the "AIG Policies"). Despite the fact that Nazaki owned no interest in one of the wells at issue and had transferred its potential interest in the other before the disclosure giving rise to the Well Disclosure Claims, AIG has improperly denied coverage based on its assertion that the claims somehow relate to the Nazaki claims.

A.  **The XL and Axis Policies**

30. Effective December 15, 2010, XL and Cobalt entered into a claims made "Management Liability and Company Reimbursement Insurance Policy," policy number ELU119786-10, a true and correct copy of which is attached as Exhibit A.[1] The Cobalt Directors and Officers are named insureds (or "Insured Persons") under the XL Policies. *See* Ex. A § II(J)(1) ("'Insured Person' means . . . any past, present or future director or officer . . . of the Company . . . ."); Ex. B § II(J)(1) (same). XL continued to serve as Cobalt's—and thus as the Cobalt Directors' and Officers'—primary insurer through December 15, 2012.[2]

31. As it pertains to the Cobalt Directors and Officers, the XL Policies obligate XL to "pay on behalf of the Company Loss which the Company is required or permitted to pay as indemnification to any of the Insured Persons resulting from a Claim first made against the

---

[1] Unless otherwise defined herein, all capitalized terms have the meanings set out in the XL Policies.

[2] Effective December 15, 2011, Cobalt renewed its XL coverage. A true and correct copy of the renewed XL Policy, policy number ELU124020-11, is attached as Exhibit B.

6

Insured Persons during the Policy Period . . . for a Wrongful Act . . . ." Ex. A § I(B); Ex. B § I(B) (same). Under various indemnification agreements between Cobalt and the Cobalt Directors and Officers, Cobalt is required to indemnify the Cobalt Directors and Officers to the fullest extent permitted by applicable law. Moreover, the Delaware General Corporation Law permits defense and indemnification of the Cobalt Directors and Officers. *See, e.g.*, DEL. CODE ANN. Tit. 8, § 145. Accordingly, under the XL Policies, XL is obligated to "pay on behalf of the Company" any such indemnifiable amounts up to the policy limits. *See* Ex. A § I(B); Ex. B § I(B).

32. The XL Policies cover, among other things, "Loss resulting from a Claim first made against the Insured Persons during the Policy Period or, if applicable, the Optional Extension Period" and "Loss resulting solely from any Securities Claim first made against the Company during the Policy Period or, if applicable, the Optional Extension Period, for a Company Wrongful Act," without any requirement that the Claim also be reported to XL during the Policy Period or Optional Extension Period. *Id.* § I.

33. Section VI(A)(2) of the XL Policies treat "as if it had been first made during the Policy Period" any Claim made against Cobalt or an Insured Person *after* the Policy Period, if during the Policy Period Cobalt learned of and notified XL of the circumstances potentially giving rise to that Claim.[3]

---

[3] Section II of the XL Policies contains the following definitions:
- "Claim" is defined to include, among other things, any "written demand or notice for monetary or non-monetary relief," "civil proceeding," "administrative or regulatory proceeding commenced by a complaint, notice of charges or similar document," "civil, criminal, administrative or regulatory investigation of an Insured Person once such Insured Person is identified by name in a Wells Notice, notice of charges, formal investigative order, subpoena, target letter or any similar document," and "investigation of the Company for a Company Wrongful Act by the Securities Exchange Commission or any similar state, federal or foreign agency . . . ." *See* Ex. A § II(C). Sections II(Q) and III(G) confirm that this definition includes shareholder derivative actions.

7

34. The 2010-2011 XL Policy provides $20,000,000 in coverage, with a $1,000,000 retention for each Claim against the Company but no retention for each Claim against an Insured Person. The renewed 2011-2012 XL Policy provides $15,000,000 in coverage, with the same $1,000,000 retention for each Claim against the Company but no retention for each Claim against an Insured Person.

35. Cobalt supplemented its coverage under the 2010-2011 XL Policy by obtaining excess insurance coverage from, among others, Axis. Cobalt's policy with Axis (the "Axis Policy"), policy number MHN749342/01/2010, a true and correct copy of which is attached as Exhibit C, provides an additional $10,000,000 in coverage after $20,000,000 of Loss.

36. Cobalt has paid the required Policy Premiums under the XL Policies and Axis Policy, and the Cobalt Directors and Officers are therefore entitled to the coverage guaranteed by those policies.

**(i)** **The Nazaki Claims**

37. In 2007, Cobalt acquired a 40% interest in three development blocks offshore of Angola. The Angolan government subsequently assigned interests in two of the three blocks to Nazaki and two other Angolan companies.

38. On December 15, 2010, the XL Policy became effective.

39. In March 2011, Cobalt disclosed in both its Form 8-K and its Form 10-K that it was aware of allegations concerning a connection between Nazaki and senior Angolan

---

- "Loss" is defined to include "damages, judgments, settlements or other amounts" as well as "Defense Expenses in excess of the Retention that the Insured is legally obligated to pay." *Id.* § II(M).

- "Defense Expenses" are defined to include "reasonable legal fees and expenses incurred in the defense of any Claim . . . ." *Id.* § II(F).

8

government officials and that the SEC was investigating the allegations. Cobalt also disclosed that it had voluntarily contacted the DOJ and offered to respond to any requests from the agency.

40. On October 26, 2011, the SEC issued a non-public Order Directing Private Investigation and Designating Officers to Take Testimony (the "October Order"), a copy of which Cobalt received on November 7, 2011. Cobalt disclosed the October Order and Cobalt's cooperation with both the SEC and DOJ investigations in its February 21, 2012 Form 10-K.

41. On Sunday, April 15, 2012, the Financial Times published two articles related to the potential connection between Nazaki and Angolan government officials.

42. On May 8, 2012, Cobalt received an inspection of books and records demand from two purported shareholders. In response, Cobalt produced a limited set of records subject to a confidentiality agreement.

43. On July 30, 2012, Cobalt provided XL and Axis with a "notice of Claim and/or notice of circumstances that may give rise to a Claim" (the "July Notice").[4] Cobalt expressly identified:

      a. Cobalt's cooperation with the ongoing SEC and DOJ investigations;

      b. the October Order;

      c. the April 2012 Financial Times articles;

      d. internet postings suggesting that several shareholders were considering claims against Cobalt and/or its directors or officers; and

      e. The May 8, 2012 demand for inspection of books and records.

44. Cobalt attached a copy of the October Order, the Financial Times articles, the Internet postings, and the shareholder demand to the July Notice.

---

[4] Cobalt provided notice to Axis each time it notified XL under the XL Policies.

### (ii) XL and Axis Improperly Deny Coverage

45. On September 19, 2012, XL sent Cobalt a letter denying coverage on the grounds that XL was not notified "as soon as practicable" after the SEC made a Claim against Cobalt.

46. On November 5, 2012, Cobalt rebutted XL's rationale for denying coverage, stating, among other arguments, that "XL has not been prejudiced by receiving the SEC Order" no later than August 1, 2012 and therefore XL remained obligated to provide coverage under the XL Policy.

47. On November 12, 2012, XL responded to Cobalt's letter and again denied coverage.

48. On November 19, 2012, Cobalt responded to XL's repeated improper denials of coverage by reserving all of its rights and remedies with respect to the dispute.

49. On August 4, 2014, the SEC issued a "Wells Notice" to Cobalt based on the alleged connection between Nazaki and senior Angolan government officials. The Wells Notice stated that staff at the SEC had "made a preliminary determination to recommend that the Commission file an enforcement action" against Cobalt.

50. On August 14, 2014, Cobalt informed XL of the SEC's Wells Notice and of Cobalt's intent to make a submission to the SEC in response to that notice (the "August Notice"). Cobalt also informed XL that a number of law firms had announced related investigations of Cobalt.

51. On September 8, 2014, XL responded to Cobalt's August 14, 2014 letter stating that "coverage is unavailable" for either the Wells Notice or the SEC investigation. XL said it was denying coverage because both the Wells Notice and the SEC investigation related back to the October Order and therefore, according to XL, "Cobalt did not provide timely notice."

52.     Axis, who was timely notified of these Claims, either already has denied or intends to deny coverage.

**B.     The AIG Policy**

53.     On December 15, 2012, Cobalt chose not to renew or to otherwise continue its insurance coverage with XL. Instead, Cobalt obtained management liability insurance from AIG.

54.     Effective December 15, 2012, AIG and Cobalt entered into a "Broad Form Management Liability Insurance Policy," policy Number 01-499-94-38 (the "AIG Policy"), a true and correct copy of which is attached as Exhibit D. The Cobalt Directors and Officers are named insureds (or "Insured Persons") under the AIG Policies. *See* Ex. D § 13 ("'Insured Person' means any: (1) Executive of an Organization . . . ."); *id.* ("'Executive' means any past, present, and future duly elected or appointed director, officer, trustee or governor of a corporation."); Ex. E § 13 (same). AIG continued to serve as Cobalt's—and thus the Cobalt Directors' and Officers'—primary insurer through December 15, 2015.[5]

55.     Section 1 of the AIG Policies lists the coverage provided by the policy, which includes "Insured Person Coverage," "Indemnification of Insured Person Coverage," and "Organization Coverage." Insured Person Coverage includes "the Loss of any Insured Person that no Organization has indemnified or paid, and that arises from any (1) Claim (including any Insured Person Investigation) made against such Insured Person . . . for any Wrongful Act of such Insured Person; or (2) Pre-Claim Inquiry . . . ." Indemnification of Insured Person Coverage includes "the Loss of an Organization that arises from any (1) Claim (including any

---

[5] Effective December 15, 2013, AIG and Cobalt renewed the AIG Policy. A true and correct copy of the 2013-2014 AIG Policy, policy number 01-739-05-86, is attached as Exhibit E. Endorsement 34 of the 2013-2014 AIG Policy includes the Nazaki Exclusion.

11

Insured Person Investigation) made against any Insured Person . . . for any Wrongful Act of such Insured Person; and Pre-Claim Inquiry . . . ." Organization Coverage includes "the Loss of any Organization: (1) arising from any Securities Claim made against such Organization for any Wrongful Act of such Organization; (2) incurred as Derivative Investigation Costs, subject to a $250,000 aggregate sublimit of liability; or (3) incurred by an Organization or on its behalf by any Executives of the Organization (including through any special committee) as Defense Costs in seeking the dismissal of any Derivative Suit against an Insured." Ex. D § 1; Ex. E § 1.

56. Section 7 of the AIG Policies provides that, if a Claim was first made and reported in accordance with the policy's notice requirements, then any Related Claim that is subsequently made and reported in accordance with the requirements "shall be deemed to have been first made at the time that such previously reported Claim was first made."[6]

---

[6] Section 13 of the AIG Policies contains the following definitions:

- "Claim" is defined to include, among other things, "a written demand for monetary, non-monetary, or injunctive relief," "a civil . . . proceeding for monetary, non-monetary, or injunctive relief which is commenced by . . . service of a complaint or similar pleading," "an "Insured Person Investigation," and "a Derivative Demand." *See* Ex. D § 13.
- "Related Claim" is defined as "a Claim alleging, arising out of, based upon or attributable to any facts or Wrongful Acts that are the same as or related to those that were either: (i) alleged in another Claim made against an Insured; or (ii) the subject of a Pre-Claim Inquiry received by an Insured Person." *Id.*
- "Insured Person Investigation" is defined to include "any civil, criminal, administrative, or regulatory investigation of an Insured Person . . . once the Insured Person is identified in writing by an Enforcement Body as a target of an investigation that may lead to a criminal, civil, administrative, regulatory or other enforcement proceeding."
- "Derivative Demand" is defined as "a written demand by any shareholder of an Organization upon the board of directors . . . of such Organization to commence a civil action on behalf of the Organization against any Executive of the Organization for any actual or alleged wrongdoing on the part of such Executive."
- "Loss" is defined to include "damages, settlements, judgments," "Defense Costs," "Derivative Investigation Costs," and "Pre-Claim Inquiry Costs."
- "Defense Costs" is defined to include "reasonable and necessary fees, costs and expenses consented to by the Insurer . . . ."

57. Endorsement 25 of the 2012-2013 AIG Policy excludes from coverage the Nazaki Claims (which are instead covered by the XL Policies). Specifically, the AIG Policies provide that any Claim or Wrongful Act "[a]rising out of, based upon or attributable to any and all alleged violations of federal securities laws and FCPA oriented around, and with respects to, the relationship between Angolan officials, Nazaki Oil and Gazthe [sic], and Cobalt International Energy, Inc." is excluded from coverage (the "Nazaki Exclusion"). *Id.* at Endorsement 25; Ex. E at Endorsement 34.

58. The AIG Policies provide $10,000,000 in coverage, with a $2,500,000 retention for each Claim. That retention does not apply to Derivative Investigation Costs, which are subject to a $250,000 aggregate sublimit of liability for each policy year.

### (i) The Lontra and Loengo Related Claims

59. In 2013, Cobalt, Sonangol, and British Petroleum drilled the "Lontra" well in Angolan offshore Block 20. Nazaki did not own any interest in Block 20 and did not participate in the well. On December 2, 2013, Cobalt announced that its Lontra well "contain[ed] more gas than [its] pre-drill estimates."

60. In 2014, Cobalt drilled the "Loengo" well in Angolan offshore Block 9. Nazaki initially owned an interest in Block 9, but Nazaki transferred its interest to Sonangol before Cobalt finished drilling operations on the Loengo well. Cobalt received notification of this transfer on August 26, 2014. Cobalt finished drilling the Loengo well in October 2014, with only Cobalt and Sonangol owning any interest in this well. On November 4, 2014, Cobalt

---

- "Derivative Investigation Costs" is defined to include "reasonable and necessary costs, charges, fees, and expenses consented to by the Insurer and incurred by the Organization . . . in connection with a Derivative Investigation."
- "Derivative Investigation" is defined to include, "after receipt by any Insured of a Claim that is either a Derivative Suit or a Derivative Demand, any investigation conducted by the Organization . . . as to how the Organization should respond."

13

announced that the Loengo well "contained neither oil nor gas." Nazaki had no interest in the well at this time, and played no role in the announcement.

### (ii)   Subsequent Demands and Lawsuits Against Cobalt and the Cobalt Directors and Officers

61. Beginning in November 2014, purported Cobalt shareholders brought demands for investigation and/or putative class actions against Cobalt and several of the Cobalt Directors and Officers (the "Securities Litigation").

62. The Securities Litigation consisted of the following civil actions brought in state and federal courts:

- a. *St. Lucie County Fire District Firefighters' Pension Trust Fund v. Bryant*, Civ. A. No. 4:14-cv-03428 (U.S. District Court for the Southern District of Texas, November 30, 2014);

- b. *Neuman v. Cobalt*, Civ. A. No. 4:14-cv-03488 (U.S. District Court for the Southern District of Texas, December 5, 2014) (consolidated with *St. Lucie* into *In re Cobalt International Energy, Inc. Securities Litigation*, Civ. A. No. 4:14-cv-03428, on March 3, 2015);

- c. *Ogden v. Bryant*, Civ. A. No. 4:15-cv-00139 (U.S. District Court for the Southern District of Texas, January 16, 2015);

- d. *Gaines v. Bryant*, Cause No. 2016-29850 (Harris County District Court, May 6, 2016); and

- e. *McDonaugh v. Bryant*, Cause No. 2016-82186 (Harris County District Court, November 29, 2016).

63. The Securities Litigation also consists of several internal investigation demands:

- a. Ira Gaines as Trustee for Paradise Wire and Cable Defined Benefit Pension Plan (served an initial demand on July 21, 2015 and a supplement on March 8, 2016);

- b. Karen McDonaugh (served on March 21, 2016); and

- c. Michael Hafkey (served on July 11, 2016).

64. The plaintiffs asserted damages from, among other things, (1) alleged misrepresentations and omissions about Nazaki's relationship with Angolan government officials, and (2) Cobalt's alleged public misrepresentations and omissions about the Lontra and Loengo wells.

65. Cobalt has timely notified XL and AIG of these claims, and both XL and AIG have repeatedly denied coverage.

66. XL has denied coverage for these Claims on the grounds that, according to XL, (1) Cobalt did not timely notify XL of the Nazaki Claims and (2) the Well Disclosure Claims were brought against Cobalt after the XL Policy Period, do not relate to the Nazaki Claims, and therefore are covered by the AIG policy, not XL. Axis either has denied or intends to deny coverage for these claims as well.

67. AIG has repeatedly denied coverage for both the Nazaki Claims and the Well Disclosure Claims based on the Nazaki Exclusion.

68. On January 22, 2015, the SEC informed Cobalt that it had concluded its investigation and did "not intend to recommend an enforcement action by the Commission against Cobalt."

## IV. Intervention

69. The Cobalt Directors and Officers join this action as a matter of right pursuant to Texas Rule of Civil Procedure 60. First, Intervenors have a justiciable interest in this proceeding because they are Insured Persons under the XL Policies, Axis Policy, and AIG Policies. *See* Ex. A § II(J)(1); Ex. B § II(J)(1); Ex. C § I; Ex. D § 13; Ex. E § 13. Accordingly, these insurers' wrongful denial of coverage prejudices the Cobalt Directors and Officers. Thus, Intervenors have an interest in, and will be affected by the resolution of, Cobalt's pending claims and request

for declaratory judgment and are necessary parties to this action under Section 37.006 of the Texas Civil Practice and Remedies Code. Second, intervention will not complicate the case by excessive multiplication of the issues because Intervenors' claim arises from the same transactions and occurrences, and involves common questions of law and fact, as Plaintiffs' pending request for declaratory relief regarding the Defendants' obligation to pay for Losses. Third, intervention is essential to effectively protect Intervenors' interests. Intervenors are entitled to coverage under the XL Policies, Axis Policy, and AIG Policies, and intervention is necessary to secure a ruling regarding such coverage.

70. Moreover, intervention is proper pursuant to Section 37.006(a) of the Civil Practice and Remedies Code, which provides that "[w]hen declaratory relief is sought, all persons who have or claim any interest that would be affected by the declaration must be made parties."

### V.    Cause of Action

71. Intervenors incorporate the allegations set forth in all preceding paragraphs as if restated in full herein.

72. There is a justiciable controversy regarding the Cobalt Directors and Officers' entitlement to coverage under the XL Policies, Axis Policy, and AIG Policies. This controversy is real and substantial and involves a genuine conflict of tangible interests. A declaration from the court would resolve this controversy.

73. Therefore, pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code, Intervenors request and are entitled to declarations that:

>   a.    XL is obligated to pay on behalf of the Company any Loss incurred by any past, present, or future director or officer of Cobalt, including Defense Expenses and Derivative Investigation Expenses, suffered due to the

        relevant circumstances, investigations, and claims described above, including, specifically, the Nazaki Claims;

    b. Because any past, present, or future director or officer of Cobalt is entitled to coverage for the Claims described above under the 2010-2011 XL policy, they are also entitled to coverage by Axis and Axis must therefore cover the circumstances, investigations, and claims described above including, specifically, the Nazaki Claims; and

    c. AIG is obligated to pay on behalf of the Company any Loss incurred by any past, present, or future director or officer of Cobalt, including Defense Costs and Derivative Investigation Costs, suffered due to the relevant circumstances, investigations, and claims described above, including, specifically, the Wells Disclosure Claims.

74. In addition, in accordance with Texas Rule of Civil Procedure § 37.09, Intervenors seek and are entitled to an equitable and just award of costs and attorneys' fees.

## VI. Conditions Precedent

75. All conditions precedent to the claims asserted and relief requested herein have been performed or have occurred as required by law.

## VII. Prayer

76. Intervenors respectfully request that the Court enter judgment in favor of the Cobalt Directors and Officers awarding the following:

    a. declaratory relief as described above;

    b. attorneys' fees and expenses as allowed by law;

    c. costs of Court; and

    d. such other and further relief, at law or in equity, to which they may be entitled.

Respectfully submitted,

**GIBBS & BRUNS, LLP**

By: /s/ *Barrett H. Reasoner*
    Barrett H. Reasoner
    Texas Bar No. 16641980
    breasoner@gibbsbruns.com
    Jeffrey C. Kubin
    Texas Bar No. 24002431
    jkubin@gibbsbruns.com
    Michael R. Absmeier
    Texas Bar No. 24050195
    mabsmeier@gibbsbruns.com
    1100 Louisiana, Suite 5300
    Houston, Texas  77002
    Telephone:  713-650-8805
    Facsimile:   713-750-0903

**ATTORNEYS FOR INTERVENORS**

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing instrument was served upon the following counsel of record on this 6th day of January, 2017.

Eric J. Mayer
Shawn L. Raymond
Adam Carlis
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
*Attorneys for Cobalt International Energy, Inc.*

Howard Close
Andrew Love
WRIGHT & CLOSE, LLP
One Riverway, Suite 2200
Houston, Texas 777056
*Attorneys for XL Specialty Insurance Company*

David H. Topol
Cara Duffield
Leland Jones
WILEY REIN, LLP
1776 K. Street NW
Washington, D.C. 20006
*Attorneys for XL Specialty Insurance Company*

   */s/ Michael R. Absmeier*
Michael R. Absmeier